Next case is People v. Jonathan Moore. Ms. Katnas, are you ready to proceed? Ms. Katnas May it please the Court, Counsel. Good morning, Your Honors. My name is Jennifer Katnas. I'm a criminal defense attorney. I practice in Jackson County, Illinois. It's an honor for me to be here today to argue this case before you on behalf of my client, Jonathan Moore. This case comes to you, Your Honors, on a procedural history from a conviction of a bench trial, from a bench trial in Jackson County. This case is a procedural history from a bench trial in Jackson County. This case presents two very important constitutional issues. The first one, we believe, is the most important because we believe it is presidential in the 5th District. My last check, I do not know, but I did not find any other 5th District cases that are addressing the applicability of the recent United States Supreme Court case ruling in Arizona v. Gantt. The first issue is whether the first trial judge in this case, the Honorable W. Charles Grace, committed a reversible error when he denied my motion to quash the arrest and suppress the evidence of my client. It was based on an unreasonable search and seizure at that time. Now, on that first motion, Arizona v. Gantt had still not been decided. So the court relied on U.S. v. Thornton and considered my client a recent occupant under the rulings of U.S. v. Thornton and also considered the search to be a valid inventory search under the Illinois Supreme Court case of people v. Gibson. So that motion was denied. While my client was still in custody, the Arizona v. Gantt decision came down. And, of course, it is applicable because he was pending, his case was still pending. I filed another motion to suppress the arrest and quash evidence. And this time I cited the Arizona v. Gantt ruling. And I argued in my memorandum of law to the judge that under the rulings of Gantt, that my client was still in custody. And I argued that the motion to suppress had to be granted. Now, the facts of this case are very simple. And I will make it as brief as possible. On October 15, 2008, Carbondale police officers were dispatched on an anonymous tip to a certain house at 404A East Ashley Street. They were dispatched there to check out, allegedly, a person named Ryan Gibbs was wanted on an arrest warrant. The officers went to the residence, did a knock and talk, began talking to people, occupants at the house. While the officers were standing on the porch, one of the officers, I believe it was Dunning, saw my client, Jonathan Moore, walking down the sidewalk towards a Pontiac G6 vehicle that was legally parked in front of this residence in the parking lot. My client walked to that car. He opened the door. He stood in the doorway. And as he stood in the doorway, he placed both his arms up over the roof and door and was resting. And he was looking towards the porch, watching what was going on. You want to know what was going on? So he was standing there watching. He was on the driver's side? Yes, yes. He went to the driver's side. He unlocked the car. He went to the driver's side, opened the door, and he stood there. Now, he stood there watching. Then one of the officers, I believe it was Sergeant Reno, then told Officer Dunning, they were aware that my client, Jonathan Moore, was wanted on an outstanding bench warrant for failure to appear in court. So they knew he had a warrant. They came walking towards him. As they came walking towards him, he stepped back out of the doorway, closed the door, locked the door, and then walked towards the officer. He didn't run or anything. It wasn't anything like that. The officer said, well, you know, you haven't got an outstanding warrant. So they immediately handcuffed him. Now, while they were handcuffing him, he had the keys in his hands. He attempted to hand the keys to one of his friends and had also gathered to see what was going on now with Jonathan. He tried to hand the keys over. The Sergeant Reno, the supervising officer then, had the keys in his hands. He walked up as Sergeant Dunning was handcuffing Jonathan Moore. Sergeant Reno grabbed the keys out of his hands and would not give them to any of his friends, took the keys. He immediately took my client, Jonathan Moore, to the squad car, put him in the back seat, and drove him off to be processed for arresting. My client wasn't even on the scene when the vehicle was searched. Now, after my client leaves, Officer Dunning says to Officer Reno, we need to search this vehicle, incident to arrest. So they immediately, Officer Reno gets on the radio and he calls Express Towing Company. And he calls them to come and pick up the vehicle and tow it to the station, specifically for searching for drugs. The vehicle was found to have been used for contraband. That is undisputed. I believe Officer Dunning, I specifically asked him at the motion hearing, Officer Dunning, I said, what evidence did you expect to find in that vehicle when you ordered the search? He said, narcotics. I asked him, what evidence did you expect to find in support of the failure to appear warrant did you expect to find in that vehicle? And he just kept saying, contraband. Failure to appear was associated with narcotics? No, no, it was an aggravated battery charge. It was even later dismissed. Does the record reflect why he associated narcotics with your client? No, no, no. I never, I don't know of any, the officers, I don't know, I think they knew him. They knew him to be a drug dealer or something? I wish I could say, but that's not the record. I don't believe that ever came out in the hearing. But it did come out that they were going to search for drugs? Yes, definitely. But no reason why they picked drugs as opposed to bloody knives or guns or anything else? No, it was the area, the area this was going on, this party, I will say I believe is known for problems, drug problems, things like that, yes. So that may have been, it was the street crimes unit that was called out. So they were all familiar with all these people that live in this area. I believe it's Jackson County Housing. And so they are familiar with the area. Your client had a prior drug record or anything? Is that why they may have felt that? You know, honestly, Your Honor, I can't say at this time. I really, I don't know. I honestly don't know. I know he may have been contacted or arrested previously, but I really don't know what his convictions are. So the search was after there was a call made out to have it towed? Oh, yes. Right. Well, yes, I think what they did was the tow company came, picked it up, took it to the police. Oh, the search not on the scene? Correct. Well, they may have done a cursory search. They searched my client's person. He had nothing on him. No, I'm talking about the vehicle. Right, the vehicle. That, Your Honor, I wish I could answer that. Also, I don't believe that ever came up in the hearing. But they had not observed any criminal activity, you understand. The officers had not observed any criminal activity concerning my client or that parked vehicle that evening. They hadn't even seen my client drive that vehicle for, I believe it was, eight days. It was the last time they even saw him in the vehicle driving it. It was a rental vehicle. It was rented to the woman who lived right there. But he was a named driver. Yes, he was an additional driver listed on the lease. But he did not lease the car himself. So anybody else should not be driving it. He or she could not give anyone else permission to drive the vehicle. That would be correct, yes. When he tried to give the keys to a friend, correct. Because it was a rental vehicle. Did the police know that at that time? Well, they knew that it was a rental vehicle. Yes, they did know. The officers were aware. Did they know that the person who your client wanted to give the keys to was not authorized to drive the car? Oh, no. They don't know that. No. Well, they once saw the lease agreement the week before. They saw the lease agreement. And it had Natasha Perry as the lessee. I believe it was. And then it was like Jonathan Moore, but I don't believe, I think it was Torian Kriers who they were going to, he was going to give the keys to. No. But they made no attempt to even locate Natasha Perry. They knew the guy who was going to give the keys was not Natasha though. Correct. Yes, that's correct. All right. Now, okay, so what is interesting about this search is it is absolutely all points on Gantt. And factually, it's very identical to the situation in Gantt. And I will point that out to you. The facts in Gantt, okay, was that the vehicle was legally parked because he had driven up into the driveway, got out, parked his vehicle, and started to go into the house when he was arrested, Gantt. He was wanted on an outstanding warrant. They took Gantt. They handcuffed him. They placed him in the back of the squad car. And then they searched the vehicle. They found, immediately searched the vehicle and found drugs in a jacket pocket. A jacket sitting in the back pocket. When they went through the vehicle, at the station is where they did this? Or at the tow yard? Where was it that they actually did this? I believe Gantt was searched right there. Oh, not Gantt. I mean in this case. In my case, I believe they towed it first. Where did they tow it to? They towed it to the police department. Do you know if when they went through the vehicle, did they fill out an inventory form? I have never seen one. I don't believe one ever was produced at the hearing either. I don't even think the subject came up at the time of the hearing. Because, you understand, at the first hearing, at the first motion hearing, they were banking on it was a search incident to arrest. And then the inventory was thrown in and I think now the community care thing, I'm not really sure about that either. But there was no new evidentiary hearing after the first hearing. Correct. The judge made his decision based on memorandums that we filed at the trial level and then made a written order. So it's identical to Gantt. Now what's interesting is the Illinois Supreme Court has now adopted the rationale and holdings of Gantt. And they did that in Peabody v. Bridgewater, which I think I'm sure you're familiar, 235 Illinois 2nd 85. In that case, the defendant's vehicle was parked. He got out of the vehicle, he walked into a store, walked out, and then they said, take your hands out of your pocket. He didn't do it. They placed him under arrest for obstructing a peace officer. They handcuffed him, took him to the car, and transported him away. Now, there was no concern of safety issues because he was handcuffed in the back seat of the car. There was no evidence that could be discovered that's going to support obstructing a peace officer that's related to the car. So the question then in that case was, does Gantt say that this is an unreasonable search without a warrant? Because it's a warrantless search, but no attempt to get a warrant at all, and no probable cause even. But Gantt wasn't searched pursuant to an inventory. Gantt was not searched pursuant to an inventory. This they're alleging, I believe, that they had an inventory. Is there an ordinance in Carbondale on inventory? Well, Officer Reno testified that Carbondale Police Department has a written-toe policy. But he said, I believe, that when they arrest somebody from a vehicle, they can tow their vehicle and they can inventory it. Now, the problem we have with that is it gives an outright, that's saying that any police station in any city in this state can write up a little policy that says, hey, if you arrest somebody from this, go ahead and tell them. Oh, not that one, not that charge, but how about this charge? If you arrest them for this, you can tell it. That's why the Supreme Court, in the case of People v. Hundley, the Illinois Supreme Court, followed the U.S. Supreme Court in Overman saying, wait a minute, it's not unrestrained. You can't take a policy and put it over our citizens' constitutional rights. That's exactly what they're trying to do here. They're trying to say, it doesn't apply. It wasn't an inventory search. So they're saying, you need to go by Gibson, which that case, all that case stood for was when the existence of the scope of the search, the inventory search was in question. Yes, you had to have a written policy or at least testimony to that policy that says what the scope of the inventory is going to be. That's the discretion. Even all the cases say the original impoundment must be lawful. So if they're going to say it's an inventory, then we need to look at it and say, well, what was the original impoundment? They cannot say the original impoundment was lawful. In an inventory search, the search is conducted to the vehicle that's illegally parked. The vehicle is impeding traffic, creating a safety hazard or cannot remain here. That's when the original inventory tow and search comes in because you can't leave the vehicle there. In our case, Mr. Moore, that leased vehicle, leased to Natasha Perry, was legally parked. There was no impediment, no safety questions, the car was locked. Nothing was going to happen to that vehicle. Let's say you had a whatever fancy car you wanted to. It was worth $150,000 from a sports car. And it was in, we'll say, downtown East St. Louis, downtown Carroll. The minor might not have reputations of being in places. You wouldn't want your car there. Do you think that the police, as the community caretaker, could not take the car and place it in their custody? Well, you have to understand, the courts have also already said that leaving a car unattended is not enough. That's not a reason to tow. Just because a car is going to be left unattended, that's in my brief. Well, my point is, can't they look at the neighborhood or the locale? Would that not? You yourself, I thought you said earlier that this neighborhood may have had a reputation of drugs and other things. Shouldn't the police be able to take that into consideration? Well, no, I don't believe so. Because when you give officers too much discretionary power, then you don't have a standardized policy. You can have, and that's interesting about a standardized tow and inventory policy. That's the whole reason why courts want police stations to happen, because it does take away that discretion. Discretion for the officers gives them the ability to say, well, maybe I don't like you, I don't like you, I like you. That's a problem you have. So you have to have a policy that says, if you're arrested for driving while license revoked, take the car. DUI or take the car. See, like that. But if you're arresting a failure to appear warrant and they're not even driving the car, you just happen to see them walk up to it. Well, a little more in this case. He walked up to it, unlocked the door and was hanging over the door. Like he was in control of the car for that period of time. Right, and I would agree with you. But he was not driving the vehicle. He had not seen any criminal activity. I believe that he could not walk by the vehicle. They didn't see anything in plain view. They didn't see anything in the vehicle that gave him any probable cause. The prosecutor at the motion hearing, he conceded there was no probable cause to search. He even admitted that. And in the judge's first order, he even acknowledged there was no showing of probable cause to search. That's not why they're searching. They're saying inventory, which doesn't have anything to do with probable cause. Tow and inventory, that's what they're saying. Any time you tow, you've got inventory. Right, correct. And that's what they're saying. Our position all along has been, A, Gant should have thrown this case out in the beginning, long ago. But Gant's not an inventory case. But it is the same, it's what led up to that tow and inventory. Right, Gant stops at the tow and inventory question. This is one step farther, which is an inventory case. But it did, well, they didn't come up with it. You know why? The vehicle was parked in the man's driveway at home. He pulled into the driveway, got out of the vehicle, and there it was. So yes, there was no issue of inventory ever came up in Gant. You're correct. But it did in Bridgewater, and it did in Clark. And that's why, in my brief, I rely also, Your Honors, very heavily on the case of People v. Clark. Because in that case, the court stopped, the officer stopped a guy from failing to, he ran a stop sign, I think it was. And they ended up, they had to arrest him. And they ended up, they decided, well, we're going to tow his car, we're going to place him in custody, tow his car. There was no evidence presented where the car was, or how, was it illegal, was it causing a problem, or anything. They said that the Chicago policy said, if you arrest somebody, a driver, then you can tow their vehicle. And in Clark, they did not buy that. You know, the state still ignores the ultimate question on towing a vehicle, on towing and inventorying a vehicle, was the original impoundment, was the original seizure of that vehicle lawful? Bridgewater said it was a per se violation under Gant of the Fourth Amendment, even though Gant didn't go into inventory. So you'll have time for, your time's up right now, you have time to rebuttal if you need to. Okay, thank you, Your Honor. And my next issue is the speed. No, your time's up. Oh, I'm sorry. Oh, I thought that was five minutes. No problem. Ms. Daly, you're up. Thank you, Your Honor, I appreciate it. Good morning, Your Honor. May I please have the floor to the counsel? There's one particularly striking aspect of this case I want to talk about in a little bit. I won't start off with it, but one, I think, very interesting and important issue is what we'll call for purposes here, the dual motivation, because, you know, as counsel points out in her briefs, an argument that the police at the time, and understand this is a pre-Gant case, so we have a search incident to arrest, otherwise valid at the time that they were going to search the vehicle for contraband. And I think that's something that has to be really considered by the court in the context of everything here. So I wanted to discuss that, but first I want to talk about Gant briefly. This isn't a Gant case. And I say that to the extent that the court found that the Gant prohibited the search incident to arrest. The state conceded that there was no valid search incident to arrest that could be effectuated because of the Gant decision. We're not challenging that decision, or, I mean, we conceded below, so we really have no choice in that matter. Recent case law, the Clark decision, the defendant talks about in the Mason case, the third district, which is cited in the state's brief, more explicitly, I think, mentions the fact that Gant and inventory seizures and impoundments and searches are legally distinct concepts. In that respect, then, a proper impoundment and an inventory search of the vehicle can be provided justification for items that are found during the search of the car. Now, one thing I've noticed in the case law, and it's very important, there's a consistent, I think, commingling, if you will, of the concepts of impoundments and inventory searches. And Justice Donovan's question sort of highlighted that for me when he asked whether there was an inventory sheet which relates to the search of the vehicle. It's probably important at this point to emphasize the posture of this is focused on the impoundment. If the impoundment is improper, then the propriety of the procedures to inventory search the car later on become irrelevant. There hasn't been any challenge or any argument raised as to, or really any evidence that's produced at the hearing below as it related to the search of the car, just related to the impoundment of the vehicle, and that's been the focus, I think, of the defendant's argument here on appeal. It's also important to note, I think, that the time that the court decided this case, based upon the evidence that was heard, the court made a dual finding. One, it found that the search of the vehicle was valid on the basis of a search incident to arrest. It also found that the search was valid on the basis of a proper impoundment and towing pursuant to a carbondel policy. So, of course, Gantt knocks out the first part, and the court ultimately found that still, nonetheless, the second part equally applies and, therefore, is going to sustain the validity of the search. Isn't that the only issue we have, whether or not this is a valid inventory search? Correct. For the fourth amendment purposes, yes. It would be a trial issue, too. But for this case, right. The focus that the state has made is on the impoundment. At the risk of confusing things even further, because the whole case progressed under the auspices of the police understanding that this was going to be a valid search incident to arrest, and the tow occurred under the situation where a large group of people had gathered a fairly hostile crowd, and was concerned that obviously doing any kind of search at the scene was not going to be safe for the officers. It obviously kind of sheds a different perspective, perhaps, on the inventory search aspect. By the same token, I think I need to emphasize that there was also unrebutted evidence from the police at the time of the hearing that there was going to be a tow in the search of this case under any circumstance. So implicitly in both the testimony and the court's ruling, I guess, I've characterized this as kind of an inevitable discovery that even in the absence of, and at the time the court made this ruling, no one had any knowledge or understanding or notion that GANF was going to invalidate the search incident to arrest, that it was nonetheless going to be a valid search no matter how we look at what happened with the police and the exercise of their ability to do a search incident to arrest. The police officers, I guess we have to give them some accommodation for being honest. They said what they're looking for is contraband, which I guess could be a blunt knife, I suppose, or it could be drugs, probably more likely drugs, because he didn't mention narcotics at another point. So that being the case, the, one of the first things that I discussed in this case is a statutory procedure which allows for the impoundment of the vehicle. This was not brought up at the circuit court level. However, this court is able to affirm for any basis that appears in the record, and so therefore the record, along with the statute, does provide a basis if the court finds the statute applicable. I think that the statute I'm going to discuss here in a moment is applicable also in the context of perhaps rationalizing carbon deals public policy in the implementation of this TOE procedure. In the federal case called United States v. Duguay, they talked about, among other things, discussing whether or not it's proper for the Alton police to have towed a vehicle, is that one of the things that would allow for towing a vehicle, there was a proper only statutory scheme which allowed for such, and it made specific reference to 625 ILCS 5-11-1302, which is entitled Officers Authorized to Remove Vehicles. Relevant to Subsection C, which states that, C, Paragraph 3, which states, Any police officer is hereby authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon Highway 13, Paragraph 3, when the person driving or in control of such vehicle, and Justice Welch notes that the defendant wasn't indeed in control of the vehicle, for an alleged offense in which the officer is required by law to take the person arrested before proper magistrate without unnecessary delay. It's undergone in this case that the defendant was arrested without a warrant for aggravated battery, and this is important because then we look at 725 ILCS 5-109-1, which states that the person arrested with or without a warrant shall be taken without unnecessary delay to the nearest and most accessible judge in that county. So the interplay of these two statutes is very important because the defendant was arrested before something to which he had to be taken to a magistrate without unnecessary delay, and that's exactly the language that appears in 5-11-1302. I would submit that those two statutes combined with the undercut of facts in this case itself renders the incumbent on the vehicle valid based upon the statutory scheme. Nonetheless, getting past that for a moment, then, the question is, this talks about the police's policy to effectuate a tow based upon a policy that's promulgated. Now, the written policy wasn't presented, which is probably why there was some discussion by the court about that. The Supreme Court case says that a written policy is not necessary in order to find a way out of a tow policy. Nor was there any rebuttal or refutation of the officer's testimony that the policy was in the situation when the person was arrested that the vehicle should be towed, although the officer has discretion to give the keys to an authorized driver at his discretion. I think it's been acknowledged that there was no authorized driver at the scene. The defendant was being arrested, and the person's principal name, at least, Natasha Perry, was not there and did not come forward. So, in that sense, then, of course, the policy was there in place that would permit the police to do the tow, to impound the vehicle. What comes in here, the question is the dual motive factor. The Supreme Court precedent said that an impoundment and a search is motivated by community caretaking and public safety and policies. And, therefore, it has to be divorced from the concept of an investigatory purpose. And, therefore, when, I guess, you hear testimony to the effect that the police were going to search for contraband or looking for contraband, it gives this kind of imprimatur of an investigatory purpose. With that being said, I do think it's important to note this. It's long been held that the dual motivations of a police officer, particularly from the subjective point of view, are relevant only to the extent that they provide the singular basis on which the police undertake an activity. There was testimony in this case that the officers are going to do this, notwithstanding the search instance arrest, because a part of their policy is to tow vehicles for people who are arrested. I cite a federal case, United States v. Garner, which discusses, and it cites cases, that the presence of an investigative motive does not invalidate an otherwise proper inventory search. Now, that discusses search and not impoundment, but I think that the constitutional concept is pretty much correlates with each other, and that is in the dual motive inquiry. Is there a valid basis, notwithstanding the subjective motivations of the officer, that would allow for this to take place? We've seen this in the context of Fourth Amendment stops of vehicles and searches of vehicles, where the whole line of cases which talk about protection of stops, and the authorities, that whatever the police's protection purposes may be, as long as there's a valid independent legal basis on which to undertake something, that's going to be the overriding consideration. I also cite a case called Peeba v. Mason, which is a relatively recent case out of Third District. It has facts somewhat similar to this, to the extent that the defendant was stopped for DUI and the vehicle was searched. It was a blatant, on-the-scene search of the vehicle. Or, excuse me, I think the vehicle may have been, it was ultimately towed, but there was a search at the scene as well. And the state, in that case, tried to argue with one of the Gantt provisions. It was inapplicable, and the city of Pelham rejected that. But then it appears from my reading of the case that the court sort of soon responded and raised the question of, well, but Gantt only applies to these situations where search is an incident of arrest. Do we have evidence in this case that would have allowed an impoundment of the car in the subsequent search of the vehicle? And the appellate court said yes. The appellate court said that as long as there's a cognizable basis for the court to undertake, for a police officer from a municipality to remove a vehicle, in this case it was a revoked driver's license on the highway, on a public highway, then it would ultimately be the Mason court determined that it was not going to find that the city of Carbondale had a policy. Is that correct? Correct. Is that part of the record? The officer testified to it orally. Yes. But is there a written policy? I don't know if that actually came up or not. And that's why I mentioned that. I think that part of the reason why the court cited the Supreme Court case, which mentions the non-necessity, if you will, of written policy, is that an oral policy as long as it's there and it's out there and it's not rebutted, it's sufficient for a trier of law to find that there was a policy in place. And I think that's probably the judge's motivation for citing the case. So I do think then, so in that sense of it, I think that while this is a novel and interesting case from the perspective of the dual purpose inquiry, if you will, I do think that given the fact that the police had indicated and the court had found and credited the fact that there was a basis independent of the search instance or arrest and that sort of intended circumstances of that being one level of contraband, that allowed the circuit court to make the finding that it did to uphold the search of the vehicle. Is it the state's position that 625 ILCS 511, the authorization for the officer to impound the car, would have to be followed up by an inventory search? I think, oh, absolutely. Because the purpose of an inventory search is always going to be to protect the contents of the vehicle from a claim later on. If nothing else, the municipality has to protect itself. If you're citing to that section the authority to impound it, then they have to follow up with an inventory search back to the police department. Well, I mean, obviously the statute doesn't direct itself to that, but I think implicit in any impound is going to be an inventory search. Unless it's a circumstance where the impounder can be absolutely certain that there'd be no access to the vehicle. I'm just sort of, I'm getting off the track here, but I think, obviously, I'm not aware or I can't conceive of any impound where there wouldn't be an inventory search. Just because too many questions would be raised later on, hey, I have a bag full of $100 bills, what happens? This is just a matter of litigation protection. Did they fill out an inventory in this case? I don't know. So we don't know if they did an inventory in compliance with their own policy. Correct, because that issue didn't come up. The focus was on the impound. In other words, there's two concepts, the impoundment and then the search. And they're distinct. One, the search is dependent on the impoundment. Because there was no testimony, evidence, or really any kind of challenge with regards to the search of the vehicle itself, and it's not raising appeals to wait. Wait, it appears from the record they did not find the contraband during an inventory search. I believe that that's correct, yes. And we don't know if they ever conducted an inventory search. But if they had, they could have found it then. Is that the argument? Well, I think it's pretty safe to say there was a search of the vehicle under those circumstances. Of course, that was what the Congress told in the first place. With regards to adherence to a particularized set of procedures, which I acknowledge is a necessary component of that second part of the impoundment and search, again, I state that that's not something that's been raised as a challenge here. I don't have, the defendant didn't have any facts to show that it didn't happen. I don't have any facts to show that it didn't happen. To fall back on the maxims in the Fourth Amendment situation, the defendant carries a word of proof. I don't have to. The defendant does. So, you know, that's why I didn't really get into that. I don't know if it's necessary to get into it now. So, our position then, and to talk about, I want to talk about Clark very briefly. I still have time for this. Clark is a case where the car, the court, the defense counsel and I, I have sort of a different view of Clark, I think, and that's probably laid out in the briefs. And that's fair, and it happens a lot. But the state's position on Clark is that having come to the conclusion that Gant doesn't apply, or Gant applies to eliminate insurgency and arrest, the state accounted with the argument that, well, nonetheless, it was a valid inventory search, an impoundment search. I myself sometimes commingle these terms, but we're talking about impoundment here. The court rejected that. The court rejected that from my interpretation of the case on two bases. Number one, it talks about a general community caretaking function of the police to remove vehicles that are blocking traffic, or illegally parked, or blocking traffic, or etc. I mean, there's different situations which present a specific identifiable hazard to thoroughfares or to other drivers, gas supplies, whatever. This case appeared to be an event occurred by the police officer. It wasn't illegally parked. It wasn't in an improper location. The state had presented no evidence in this case to counter the notion that it was anything other than illegally parked. The court then went on to discuss the state's argument that there was a standardized Chicago police policy. Ultimately, the court found there was no evidentiary support for that policy. So then the court, in its conclusion, in rejecting the state's position, said so that omission, the omission being any evidence at the court below regarding the standardized police policy, and the lack of evidence regarding the location of the car leads us to conclude that no cognizable reason for the impoundment was shown. My interpretation of that is that the police have a general community caretaking function which is independent of any policy, obviously, and then there are toads that occur as a result of policy. Now, of course, the defendant makes a very good argument that just writing a policy isn't necessarily something that constitutionally rationalizes any action by the police, but it's an important and critical factor, which is why I mentioned also this argument that Carbonell's policy is closely congruent with the statutory policy authorization, which itself is reflective of the public policy of the state of Illinois. So that's an important consideration in that regard. So that being the case, of course, the state has shown a cognizable reason for that standard here for the toad, but also Clark, I think, could read for that that the policy itself constitutes in its existence a reflection of the community caretaking function of the municipality police, and that operates independently of, at times, whether or not the cars are legally parked. Obviously, the statute authorizes impoundment of the vehicle and towing of the vehicle, and it may be a very well-valued part, if the defendant's arrested and has to be taken to a judge, we don't want to leave cars sitting on the side of the road, which is exactly what would have happened in this case. So I think that there's a notion from the defendant's perspective that you have to show that there's some illegality with blocking traffic. Our counter to that is no, that you have to show that there's a policy in effect which is reflective of a municipality's understanding of what a community caretaking function is, and that may be leaving cars along the side of the road after people are arrested and no one else can take control of the vehicle. So I think under those circumstances, it's to contextualize that, that the policy was there, there was evidence to that effect, it was defensible from a constitutional standpoint and is reflective of a public policy, and that from the dual motive perspective, the fact that the officers may have articulated a desire or hope or expectation to find a contraband narcotics. Now, do I understand your argument, or the fact should be that the record does not show that there was an inventory? I don't believe that there's any discussion regarding the procedures for an inventory search. I think there was a search of the vehicle, but there was no focus at the time on the, what was the policy for the search itself. I mean, police have to do, obviously, particular things. Well, obviously, if there had been an inventory search, there would be an inventory, right? There better be. I mean, that's the whole purpose, unless it's all pretextual, which you argue is true, that there would be an inventory, and there's nothing in the record to show that there was ever an inventory or what? I mean, therefore, there was never an inventory search? I can't go there, because, again, I've handled this a ton of times, and it's a burden to repeat myself, yes. Right. The burden's on the other side. Well, you're right. I think that the focus was on the impoundment. I think if there had been a challenge or something had been raised with regards to whether there was a proper inventory of the vehicle, in that case, and then the fact that it would probably revert to the state's burden show that there was the proper procedure to follow, I think that that might be the particular issue here. I don't see that being an issue in this case, but you're absolutely right. Everything you said is absolutely correct. I just, you know, I emphasize again that the focus here, and that's why I start out with saying impoundment and inventory. When you start commingling these things, then it starts looking like you have something missing, but you don't. They're not mutually exclusive, but they are independent legal concepts that have to be considered. But the search deals with the inventory. Both of them, absolutely. They both, the inventory doesn't matter unless it's a proper impoundment, unless it's a proper inventory. Thank you. Thank you, Counselor. Any rebuttal, Counselor? Yes, Your Honor. Thank you. Your Honor, I believe the state has misspoken. They said that it was not brought up in the first motion to suppress that it was an invalid inventory. I did the motion. I did the memorandum of law. I did, I handled the trial work. Yes, I challenged on two issues. I said it was not a valid search incident to arrest. There was no probable cause to search that vehicle. And I also, my second point was, under Hundley, it was not a valid inventory search. Did you ever challenge that there was actually no inventory? They said that they conducted an inventory when they got to the police department. When they got it to there, they got in the car, and that was where they found a jacket in the back seat that had drugs in the pocket. So from the record, would it appear that everybody during the hearing accepted there was an inventory, but you're challenging it should not be justified under an inventory? Oh, it was an invalid inventory from the very beginning. But my only point is there was an inventory based on the record. Yes, I do believe it's yes. And we can straighten that. We have a case in the 97 Northeast Second 200. That's a fifth district. It comes from our own court, 2003. In that issue, we had a knock and talk where the officers saw a man walking down the street. They went, they talked to him, they patted him down, they found some drugs on him, they handcuffed him. Then they went and they placed him in the police vehicle. Then they performed what they called an indent. This case said, it set forth what the, this court, excuse me, set forth what community caretaking function is all about. And I have to differ with the state. They, just like indent, they are misapprehending the entire meaning of the community caretaking functions of our police. They enforce constitutional rights of everybody. Mine too, everybody. And also they protect the community. But this court reversed that case, reversed that conviction completely because they said that this, the search indent was performed specifically to find contraband, to look for drugs. And your honors, you cannot forget in this case, this vehicle was legally parked. It was not impeding anything. As a matter of fact, I recall Officer Dunning at the hearing, I even asked him, could you have left that vehicle there and it would have been all right? He said, yes, I suppose I could have. So the fact, I will tell you, I was shocked when the community caretaking came up because that came up on appeal. I never heard a word of that at trial at the hearing. Let me ask you this. Do you think this situation could have happened to you? No, I do not. You cannot read that statute to say that everybody's car gets towed because you have to go see a judge, because you have to appear. No, that's an entire misreading. Was he arrested for an alleged offense for which the officer is required by law to take him before a magistrate? No. And was the vehicle found and the person was in control of the vehicle? Well, that's questionable. It was parked, it was legally parked in a residential area in a parking space, which it could have been left there. The officer admitted it could have been left there. I believe Dent, and it came from this other court, this court is definitely, in that area, it was a high drug risk area, and they found him by some dope, which he probably did because they found some dope on him. But they were fishing, is what they were doing. They were successful. Then they take his car. This court even said, no, he had no reason to move the car. Why do you need to move the car? It's the same thing here. The car is completely divorced from this failure to appear warrant. It had nothing to do. The community caretaking function they said, well, okay, it's not a search incident to arrest. Well, now we're going to call it inventory. And now I feel they're saying, well, now we're going to call it community caretaking. Well, why don't you just call it what it is? It was wrong under Dent, under Bridgewater, under Clark, under Dent. All these cases, they are almost identical on facts and issues that were decided. And I am confident that this court will bring Dent to Southern Illinois. Thank you. Thank you both for your arguments and your briefs today. We'll take matter under advisement.